UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHAWN STRICKLAND,<br><br>   Plaintiff,<br><br>v.<br><br>KNOLL, INC., ANDREW B. COGAN, ROBERTO ARDAGNA, DANIEL W. DIENST, STEPHEN F. FISHER, JEFFREY A. HARRIS, JEFFREY ALAN HENDERSON, RONALD R. KASS, CHRISTOPHER G. KENNEDY, JOHN F. MAYPOLE, SARAH E. NASH, and STEPHANIE STAHL,<br><br>   Defendants, | Civil Action No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Shawn Strickland ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1.  Plaintiff brings this action against Knoll, Inc. ("Knoll" or the "Company") and Knoll's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company to Herman Miller, Inc. through its wholly-owned subsidiary Heat Merger Sub, Inc. (collectively "Herman Miller").

2.  Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading proxy statement (the "Proxy") to be filed with the Securities and Exchange Commission ("SEC") on June 11, 2021. The Proxy recommends that Knoll stockholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby

1

Knoll is acquired by Herman Miller. The Proposed Transaction was first disclosed on April 19, 2021, when Knoll and Herman Miller announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Herman Miller will acquire all of the outstanding shares of common stock of Knoll for $11.00 and 0.32 shares of Herman Miller common stock per share (the "Merger Consideration"). The deal is valued at approximately $1.8 billion and is expected to close by the end of the third quarter of 2021.

3.      The Proxy is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy contains materially incomplete and misleading information concerning the sales process, financial projections prepared by Knoll management, as well as the financial analyses conducted by BofA Securities, Inc. ("BofA Securities"), Knoll's financial advisor.

4.      For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disseminated to Plaintiff and the other Knoll stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

## PARTIES

5.      Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Knoll.

6.      Defendant Knoll is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 1235 Water Street, East Greenville, Pennsylvania 18041. Knoll common stock trades on NYSE under the ticker symbol

"KNL."

7. Defendant Andrew B. Cogan has been a director of the Company since 1996. Defendant Cogan has served as CEO of Knoll since 2001, and also serves as Chairman of the Board.

8. Defendant Roberto Ardagna has been a director of the Company since 2020.

9. Defendant Daniel W. Dienst has been a director of the Company since 2017.

10. Defendant Stephen F. Fisher has been a director of the Company since 2005.

11. Defendant Jeffrey A. Harris has been a director of the Company since 1996.

12. Defendant Jeffrey Alan Henderson has been a director of the Company since 2020.

13. Defendant Ronald R. Kass has been a director of the Company since 2018.

14. Defendant Christopher G. Kennedy has been a director of the Company since 2014.

15. Defendant John F. Maypole has been a director of the Company since 2004.

16. Defendant Sarah E. Nash has been a director of the Company since 2006.

17. Defendant Stephanie Stahl has been a director of the Company since 2013.

18. Defendants Cogan, Ardagna, Dienst, Fisher, Harris, Henderson, Kass, Kennedy, Maypole, Nash and Stahl are collectively referred to herein as the "Board."

19. Nonparty Herman Miller, Inc. is a Michigan corporation with its principal executive offices located at 855 East Main Avenue, Zeeland, Michigan 49464. Herman Miller, Inc. common stock trades on NASDAQ under the ticker symbol "MLHR."

20. Nonparty Heat Merger Sub, Inc. is a Delaware corporation and is a wholly owned subsidiary of Herman Miller, Inc.

**JURISDICTION AND VENUE**

21. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange

Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

22. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

23. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

**A. Background of the Company and the Proposed Transaction**

24. Knoll, founded more than 80 years ago, manufactures modern furniture, lighting, and accessories for both commercial and residential settings. Knoll operates through two segments: Office and Lifestyle. The Office segment focuses on designing workplace planning, with products like standing desks, conference furniture, and ergonomic chairs. The Lifestyle segment focuses on seating and tables, as well as lighting, rugs and fabrics.

25. On April 19, 2021, the Company entered into the Merger Agreement with Herman Miller.

26. According to the press release issued on April 19, 2021 announcing the Proposed Transaction:

**Herman Miller and Knoll to Combine, Creating the Preeminent Leader in Modern Design, Catalyzing the Transformation of the Home and Office**

*Brings Together Complementary Portfolios of Exceptional Brands for Commercial and Residential Settings*

4

*Enhances Scale and Capabilities to Drive Growth and Profitability*

*Accelerates Digital Transformation*

*Drives Strong Financial Benefits Including $100 Million in Expected Run-Rate Cost Synergies Within Two Years of Closing*

*Supported by Shared Culture and Commitment to Design, Innovation, Operational Excellence and Sustainability*

*Companies to Host Conference Call and Webcast at 8:30 a.m. ET Today*

**Zeeland, Mich. & East Greenville, Pa., April 19, 2021 –** Herman Miller, Inc. (NASDAQ: MLHR) and Knoll Inc. (NYSE: KNL) today announced that they have entered into a definitive agreement under which Herman Miller will acquire Knoll in a cash and stock transaction valued at $1.8 billion. The transaction, which has been unanimously approved by the Boards of Directors of both companies, is expected to close by the end of the third quarter of calendar year 2021, subject to the satisfaction of closing conditions.

Under the terms of the agreement, Knoll shareholders will receive $11.00 in cash and 0.32 shares of Herman Miller common stock for each share of Knoll common stock they own. Based on Herman Miller's five-day volume weighted average price of $43.94 per share, the transaction terms imply a purchase price of $25.06 per share, representing a 45% premium to Knoll's closing share price on April 16, 2021. Upon completion of the transaction, Herman Miller shareholders will own approximately 78% of the combined company and Knoll shareholders will own approximately 22%.

In connection with the closing of the transaction, Herman Miller will purchase all of the outstanding shares of Knoll's preferred stock from Investindustrial VII L.P. ("Investindustrial") for a fixed cash consideration of $253 million, representing an equivalent price of $25.06 for each underlying share of Knoll common stock. Investindustrial has entered into a voting agreement to vote in favor of the transaction at the special meeting of Knoll shareholders to be held in connection with the transaction.

This highly complementary combination will create the preeminent leader in modern design, catalyzing the transformation of the home and office sectors at a time of unprecedented disruption. Herman Miller and Knoll collectively have 19 leading brands, presence across over 100 countries worldwide, a global dealer network, 64 showrooms globally, more than 50 physical retail locations and global multi-channel eCommerce capabilities. The combined company will have pro forma annual revenue of approximately $3.6 billion and pro forma adjusted EBITDA of approximately $552 million, based on each company's respective last

reported 12 months and including the anticipated $100 million of cost synergies, implying adjusted EBITDA margins of approximately 16%.

"This transaction brings together two pioneering icons of design with strong businesses, attractive portfolios and long histories of innovation," said Andi Owen, President and Chief Executive Officer of Herman Miller. "As distributed working models become the new normal for companies, businesses are reimagining the office to foster collaboration, culture and focused work, while supporting a growing remote employee base. At the same time, consumers are making significant investments in their homes. With a broad portfolio, global footprint and advanced digital capabilities, we will be poised to meet our customers everywhere they live and work. Together, we will offer a deep portfolio of brands, technology, talent and innovation, to create meaningful growth opportunities in all areas of the combined business."

"This combination validates the strategic direction and our success in building a preeminent constellation of design-driven brands and leaders, and is a testament to the achievements of the entire Knoll team in bringing a contemporary perspective to how we work and live," said Andrew Cogan, Knoll Chairman and Chief Executive Officer. "We believe this combination offers significant benefits to our shareholders, clients, dealers and associates. Our shareholders will receive immediate and certain value, as well as future upside potential through ownership in an industry leader with significant growth opportunities. Our clients, the design community and dealers will have access to an expanded, exceptional portfolio of brands through enhanced channels. And our associates will benefit as part of a larger and more diversified company with a shared design legacy."

Ms. Owen added, "In addition to driving value for Herman Miller and Knoll shareholders, dealers and customers will benefit from a broader combined portfolio that will deliver beauty, joy, efficiency and utility. The transaction will also create enhanced opportunities for employees across both organizations. Herman Miller and Knoll both have cultures guided by values that support problem-solving design, and doing well by doing good, and these shared beliefs will contribute to a smooth integration."

**Compelling Strategic and Financial Benefits**

· **Pairs two industry pioneers to catalyze the transformation of the home and office at a time of unprecedented disruption.** As powerful trends reshape our lives – including distributed work, a greater focus on the home, digital disruption, the rise of DTC business models and a focus on sustainability, the health and well-being of employees, communities and the planet – the combined company will be well positioned to lead the industry in redefining home and office design solutions.

· **Combines two highly complementary businesses to create a broader product portfolio.** The transaction unites two exceptional portfolios of

- **Enhances scale and capabilities to drive growth and profitability**. The combined company will have a scaled U.S. and international footprint to facilitate growth of the combined portfolio through Herman Miller's and Knoll's well-established distribution channels. Together, Herman Miller and Knoll will have increased reach and the ability to better serve customers across the contract furnishings sector, residential trade segment and retail audience. In addition, the transaction will enhance engagement with architects and interior designers, who support the decision-making for both Contract and Residential customers.

- **Accelerates digital and technology transformation**. Herman Miller's digital transformation in both the Retail and Contract channels provides a strong foundation for the combined company to scale existing investments in both new and expanded digital capabilities. These investments will enable the combined company to further accelerate progress, ensuring it meets the highest level of manufacturing excellence, customer sales and service, and user experience.

- **Brings together common cultures and capabilities, with a shared commitment to social responsibility.** Herman Miller and Knoll have a long history and shared cultures and commitment to design, innovation, operational excellence, sustainability and social good. The transaction will ensure that the combined company continues to deliver the highest quality products to customers while further reinforcing Herman Miller's and Knoll's shared focus on building more sustainable, diverse and inclusive enterprises.

- **Delivers significant financial benefits.** The transaction is expected to generate $100 million of run-rate cost synergies within two years of closing, driven primarily by SG&A, supply chain, procurement and logistics savings. Bringing together Herman Miller and Knoll is also expected to generate significant revenue synergies across the combined business through enhanced scale, cross-selling, and digital and eCommerce opportunities. The transaction is expected to be accretive to Herman Miller's adjusted cash earnings per share in the first 12 months following the close of the transaction.

Following the close of the transaction, Ms. Owen will serve as President and Chief Executive Officer of the combined company. Mr. Cogan plans to depart the combined company upon closing of the transaction after a successful 30-year career with Knoll, during which time Knoll received the National Design Award for Corporate and Institutional Achievement from the Smithsonian's Cooper-Hewitt, National Design Museum.

Commenting on Mr. Cogan's leadership, Ms. Owen concluded, "I want to thank Andrew for his partnership in reaching this agreement and recognize his outstanding dedication to Knoll during its many years of success. Knoll thrives today as a result of Andrew's dedication to its founders' commitment to good design. In the process, he has built an organization and brand portfolio dedicated to design leadership, operational excellence, digital innovation and customer experience, building on the storied Knoll heritage and pioneering the development of groundbreaking products. We look forward to welcoming Knoll's incredibly talented team."

**Approvals, Financing and Timing to Close**

The transaction, which is expected to close by the end of the third quarter of calendar year 2021, is subject to approval by Herman Miller and Knoll shareholders, the receipt of required regulatory approvals and the satisfaction of other customary closing conditions.

The transaction is not conditioned on financing. Herman Miller expects to fund the cash portion of the transaction consideration with a combination of new debt and cash on hand. Herman Miller has obtained a commitment from Goldman Sachs for $1.75 billion of senior secured revolving and term loan credit facilities, subject to customary conditions.

B. **The Materially Incomplete and Misleading Proxy**

27. The Individual Defendants must disclose all material information regarding the Proposed Transaction to Knoll stockholders so that they can make a fully informed decision whether to vote in favor of the Proposed Transaction.

28. On June 11, 2021, Defendants filed the Proxy with the SEC. The purpose of the Proxy is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff. Without such information, Plaintiff cannot make a fully informed decision concerning whether to vote in favor of the Proposed Transaction.

***Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts***

29. The Proxy discloses management-prepared financial projections for the Company and Herman Miller which are materially misleading. The Proxy indicates that in connection with the rendering of BofA Securities' fairness opinion, BofA Securities reviewed "certain internal financial and operating information with respect to the business, operations and prospects" of Knoll and Herman Miller, provided to BofA Securities by their respective management. Accordingly, the Proxy should have, but failed to, provide certain information in the projections that Knoll's management provided to the Board and BofA Securities.

30. Notably, for the Company's projections, Defendants failed to disclose all line items used to calculate adjusted EBITDA, adjusted diluted earnings per share, and unlevered free cash flow.

31. For Herman Miller's financial projections, Defendants failed to disclose all line items used to calculate adjusted EBITDA, adjusted diluted earnings per share, and unlevered free cash flow. This omitted information is necessary for Plaintiff to make an informed decision on whether to vote in favor of the Proposed Transaction.

***Materially Incomplete and Misleading Disclosures Concerning BofA Securities' Financial Analyses***

32. With respect to the *Selected Publicly Traded Companies Analysis—Knoll,* the Proxy fails to disclose: (i) stock-based compensation for Knoll; (ii) BofA's basis for applying the multiple reference ranges used in the analysis; (iii) Knoll's net debt; and (iv) the number of fully diluted shares of Knoll common stock outstanding.

33. With respect to the *Selected Precedent Transactions Analysis—Knoll*, the Proxy fails to disclose: (i) the closing dates of the transactions used; (ii) the basis for applying the multiple reference ranges used; and (iii) the total value of each transaction selected.

34. With respect to the *Discounted Cash Flow Analysis—Knoll,* the Proxy fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) Knoll terminal values as of December 31, 2025; (iii) the inputs and assumptions underlying the perpetuity growth rate used in the analysis; (iv) the inputs and assumptions underlying the discount rates used in the analysis; (v) the Company's net debt as of December 31, 2020; and (vi) the number of fully diluted shares of Knoll common stock.

35. With respect to the *Selected Publicly Traded Companies Analysis—Herman Miller,* the Proxy fails to disclose; (i) stock-based compensation for Herman Miller; (ii) the basis for applying the multiple reference ranges used in the analysis; (iii) Herman Miller's net debt as of December 31, 2020; and (iv) the number of fully diluted shares of Herman Miller common stock outstanding.

36. With respect to the *Discounted Cash Flow Analysis—Herman Miller,* the Proxy fails to disclose: (i) the terminal values of Herman Miller as of December 31, 2025; (ii) all line items used to calculate unlevered free cash flows; (iii) the inputs and assumptions underlying the use of the implied perpetuity growth rate used in the analysis; (iv) the inputs and assumptions underlying the use of the discount rates used in the analysis; (v) the net debt of Herman Miller as of December 31, 2020; and (vi) the number of fully diluted shares of Herman Miller common stock outstanding.

37. With respect to the *Has/Gets Analysis,* the Proxy fails to disclose: (i) the inputs and assumptions underlying the use of the discount rates and perpetuity growth rates used in the analysis; (ii) the estimated cost savings used in the analysis; (iii) the additional amount of debt that is expected to be incurred by Herman Miller in connection with the Proposed Transaction; and (iv) the estimated number of fully diluted shares of Herman Miller common stock expected to be

outstanding after the Proposed Transaction is consummated.

### *Materially Incomplete and Misleading Disclosures Concerning the Flawed Process*

38. The Proxy also fails to disclose material information concerning the sales process.

39. For example, the Proxy fails to state whether any confidentiality agreements the Company entered into contain Don't Ask Don't Waive standstill provisions.

40. The disclosure of the terms of any standstill provisions is crucial to Company stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company. This information is especially important where, as here, the Proxy is silent as to whether any confidentiality agreements contained a standstill agreement and whether any standstill agreements have been waived.

41. This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Plaintiff is unable to make a fully informed decision in connection with the Proposed Transaction and faces irreparable harm, warranting the injunctive relief sought herein.

42. In addition, the Individual Defendants knew or recklessly disregarded that the Proxy omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

43. Specifically, the Individual Defendants undoubtedly reviewed the contents of the Proxy before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the Proxy omits the material information referenced above and contains the incomplete and misleading information

referenced above.

44. Further, the Proxy indicates that on April 18, 2021, BofA Securities reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion dated April 19, 2021, to the effect that the Merger Consideration was fair, from a financial point of view to Knoll stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning BofA Securities' financial analyses which has been omitted from the Proxy, and thus knew or should have known that such information has been omitted.

45. Plaintiff is immediately threatened by the wrongs complained of herein, and lacks an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that he will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. Defendants have filed the Proxy with the SEC with the intention of soliciting Knoll stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide the material information referenced above.

48. In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Knoll, were aware of the omitted information but failed to disclose such information, in violation of Section

14(a).

49. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

50. Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of Knoll shares and the financial analyses by BofA in support of its fairness opinion; and (iii) the sales process.

51. Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that BofA Securities reviewed and discussed its financial analyses with the Board during various meetings including on April 18, 2021, and further states that the Board relied upon BofA Securities' financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

52. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are

not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

53. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54. The Individual Defendants acted as controlling persons of Knoll within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Knoll and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

55. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains

the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

57. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

58. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

B. In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 17, 2021                                    **ROWLEY LAW PLLC**

*S/ Shane T. Rowley*
Shane T. Rowley (SR-0740)
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514
Email: srowley@rowleylawpllc.com
Email: drl@rowleylawpllc.com

*Attorneys for Plaintiff*